IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| BRYON KEITH SPICER, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. |
| v. ) | |
| ) | JUDGE |
| THE OHIO SECURITIES COMMISSIONER, ) | |
| FINANCIAL INDUSTRY REGULATORY ) | |
| AUTHORITY, INC., and ) | |
| SPICER WEALTH MANAGEMENT, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION
TO CONFIRM ARBITRATION AWARD**

Movant, BRYON KEITH SPICER, through undersigned counsel, hereby submits this Memorandum of Law in support of his Motion to Confirm Arbitration Award issued on October 28, 2021 (JAMS Case No. 1110025900).

**I.    INTRODUCTION**

Mr. Spicer is a SEC-registered investment advisor (CRD #2958719) working at Spicer Wealth Management (CRD #152792) and Luminist Capital, LLC in Beavercreek, Ohio. Mr. Spicer and Spicer Wealth Management engaged in JAMS arbitration regarding Mr. Spicer's request for the expungement of a customer dispute disclosure on Mr. Spicer's CRD[1] (Occurrence No. 2050958) (the "Disclosure"). The arbitrator issued an award on October 28, 2021 (the "Award") recommending expungement of the Disclosure from Mr. Spicer's CRD record and all related

---

[1] The CRD, or the Central Registration Depository, is a FINRA-owned and operated filing system that maintains registration information for broker-dealers and their representatives.

databases. Mr. Spicer is seeking this Court's confirmation of the Award in accordance with FINRA Rule 2080[2].

## II. STATEMENT OF FACTS

### A. FINRA's Legal Status and Function

Financial Industry Regulatory Authority, Inc. ("FINRA") is a private corporation that acts as a self-regulatory organization ("SRO"). FINRA is a quasi-governmental organization that regulates its member brokerage firms and exchange markets, as well as registered financial advisors. FINRA is organized and existing under the laws of the State of Delaware, maintains its principal place of business in the District of Columbia and operates branch offices around the country.

FINRA is the successor to the National Association of Securities Dealers ("NASD"). Pursuant to authority delegated by the SEC, FINRA promulgates and enforces rules that govern the activities of all registered broker-dealer firms and registered representatives of those firms in the United States. Broker-dealers and their registered representatives, as well as investment advisors, must register with FINRA and/or the SEC in order to engage in the recommendation and sale of securities. Once registered as a broker with FINRA and/or an investment advisor with the SEC, registered representatives and investment advisors are assigned a number used to identify them on the CRD, the central licensing and registrations system used by the United States securities industry and its regulators. This number is called the "CRD number." Mr. Spicer was previously a registered broker with FINRA and is currently an investment advisor registered with the SEC,

---

[2] FINRA Rule 2080 requires associated persons seeking to expunge customer dispute information from the CRD system to obtain a court order directing such expungement or confirming an arbitration award containing expungement relief. For the full text of FINRA Rule 2080, see https://www.finra.org/rules-guidance/rulebooks/finra-rules/2080.

so he has a CRD number that links to his IARD[3], IAPD[4], CRD[5], and BrokerCheck[6] records (together, his "Registration Records").

In Ohio, investment advisors must also either be registered with the state or be licensed as an investment advisor by the division of securities. *See e.g.* R.C. § 1707.141. Under both state regulation and FINRA Rule 4530, firms are required to disclose customer-initiated disputes that allege a securities-related sales-practice violation within thirty (30) days of notification.[7] FINRA will then publish the disclosure on the advisor's CRD record as an "Occurrence." FINRA publishes these disclosures regardless of merit. In fact, FINRA does not investigate the merits of these disclosures prior to publication.

The SEC monitors the securities industry. In 1996, Congress required the SEC to establish a readily accessible electronic process to respond to public inquiries about investment advisors and their disciplinary information. As part of its duties, the SEC sponsors the IARD, which is an electronic filing system that collects and maintains the registration reporting and disclosure information for investment advisors. The SEC has tasked FINRA with the maintenance and operation of both the CRD and IARD systems. FINRA is the registered copyright owner of both systems. Both FINRA and State Regulators require the use of Uniform Forms when registering and updating information. *See e.g.* Ohio Rev. Code Ann. 1301:6-3-14.1 (West 2021). Upon

---

[3] The IARD, or Investment Adviser Registration Depository is an electronic filing system for Investment Advisers sponsored by the U.S. Securities and Exchange Commission (the "SEC"), with FINRA serving as the developer and operator of the system.
[4] The IAPD, or Investment Adviser Public Disclosure, is a public website sponsored by the SEC, which provides information about investment adviser firms and representatives, as well as links to BrokerCheck information.
[5] The CRD, or the Central Registration Depository is a FINRA-owned and -operated filing system that maintains registration information for broker-dealers and their representatives.
[6] BrokerCheck is a FINRA owned and operated website that contains certain information from the CRD that is available to the public without request.
[7] For Rule 4530, see https://www.finra.org/rules-guidance/rulebooks/finra-rules/4530

3

information and belief, state regulators, including the Ohio Division of Securities do not receive or maintain copies of the Uniform Forms submitted through the CRD and IARD systems. Upon information and belief, all retention, maintenance, and publication of information submitted through the CRD and IARD systems has been wholly delegated to FINRA.

The IARD and CRD systems have identical objectives: (1) to create a regulatory system for investment advisors to improve overall regulation of advisors; (2) to make information about investment advisors available to the public; and (3) to provide investment advisors an efficient automated filing system. The IAPD is a publicly accessible version of the IARD that publishes reports for SEC-registered and state-registered investment advisors. Listed on an advisor's IAPD report are certain "disclosures," such as information about their regulatory and disciplinary history, certain criminal convictions, customer dispute allegations, and other information. All disclosures are highlighted in a big, bold, red box on the front of the advisor's IAPD page. A click on the "disclosure" box will bring the view immediately to the part of the IAPD report that further describes the disclosure.

FINRA also maintains and operates BrokerCheck (an almost identical website to the IAPD), a publicly accessible online database that contains information generated from the CRD and IARD. Once FINRA-registered, a BrokerCheck profile is created for a registered representative, which contains all disclosure information in one place. Since Mr. Spicer was previously a FINRA-registered broker, he has a publicly accessible BrokerCheck profile. The BrokerCheck website also contains an easily accessible link to an advisor's IAPD report.

Since BrokerCheck and the IAPD were created, FINRA[8] has made a series of changes to the quantity and permanence of information available to the public on these websites. Initially, the public could only request these reports via written inquiry only. Now, these websites publish this information publicly, twenty-four hours a day, seven days a week, without request. Unless expunged disclosures and related settlements and arbitration awards are published on an individual's Registration Records permanently. There is also no restriction on access to IAPD or BrokerCheck reports, which means that disclosures impact not just an advisor's professional reputation, but his or her personal reputation as well. Neither the SEC nor the state securities authorities investigate or approve the information published on the IAPD, and they acknowledge that it may not be accurate.[9] An individual's CRD and IARD records are available in their entirety without subpoena to state securities regulators and other law enforcement agencies. The information is also available to securities firms, which are required to review an advisor's CRD record when making hiring and supervisory decisions.

In order to ensure the reliability of the information contained within these reports (the maintenance of which has been wholly delegated), FINRA established a right pursuant to FINRA Rule 2080 for advisors to seek expungement of customer dispute disclosures.[10] FINRA Rule 2080(a) requires that associated persons obtain a court order "directing…expungement or confirming an arbitration award containing expungement relief." Pursuant to FINRA rules, expungement is appropriate when:

---

[8] FINRA was created in July of 2007 through the consolidation of the National Association of Securities Dealers ("NASD") and the member regulation, enforcement, and arbitration operations of the New York Stock Exchange ("NYSE"). For purposes of simplicity, throughout this Motion, the NASD, NYSE and/or FINRA will simply be referred to as "FINRA".
[9] *See* https://adviserinfo.sec.gov/ and click "Learn More About IAPD."
[10] This right to seek expungement was approved by the SEC, as any codified FINRA rule is.

(a) the claim, allegation or information is factually impossible or clearly erroneous; (b) the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation, or conversion of funds; or (c) the claim, allegation or information is false. *See*, FINRA Rule 2080(b)(1).

FINRA will not expunge information from the CRD absent an arbitration award and/or court order. Broker-dealers and investment advisor firms do not have authority to expunge information from the CRD, BrokerCheck, IAPD, or IARD. Once expungement is recommended in an arbitration award or a court order, it is FINRA who ultimately must process the expungement.

### B.  The Underlying Customer Dispute and Arbitration

In or around 2005, Mr. Charles Huber ("Customer") became a client of Mr. Spicer seeking to establish a Charitable Limited Partnership ("CLP"). Mr. Spicer and Customer met with an expert on CLPs and reviewed the advantages and disadvantages of moving monies from a taxable status to a nearly tax-free status. Each time an investor donates to a CLP, a certified appraisal is required. Mr. Spicer and Customer met with Customer's Certified Public Accountant ("CPA") to verify the data. The CPA indicated that all was in line such that Customer could implement the planning strategy. Customer then established the CLP.

For the following few years, Customer made annual charitable contributions to the CLP with funds taken from his individual retirement account ("IRA"). Mr. Spicer and Customer met approximately quarterly and, sometimes, more often in order to keep Customer updated in regard to his investments and their performance. Mr. Spicer and Customer also had discussions regarding the tax impact of the use of the CLP.

Subsequently, Mr. Spicer and Customer found that Customer's growth on the remaining monies within his IRA was larger than expected. Mr. Spicer and Customer met again with

Customer's CPA. The CPA recommended that Customer make one additional contribution to the CLP of more than $500,000, in order to: (a) earn a charitable tax credit to use for the following five years; (b) eliminate future growth on the funds in the IRA; and (c) allow the funds to grow within the CLP.

An appraisal for the contribution was completed and forwarded to Customer, who was to provide the appraisal to his CPA for attachment to his tax return for that year. Yet, the CPA did not so attach the certified appraisal. Four years later, the Internal Revenue Service discovered that the certified appraisal in question had not been attached to Claimant's tax return. By that time, the statute of limitations for disallowing charitable credit had already passed. As the charitable credit could not be disallowed, the IRS determined to disallow all future carryover losses on the same contribution, which amounted to approximately $25,000.

On July 12, 2016, Customer filed for civil litigation in Montgomery County Common Pleas Court (Case #14-cv-00090), alleging that "the firm employed [sic] tax saving [sic] strategy for the client that required an IRS qualified appraisal. The client's CPA failed to file the appraisal, which resulted in the inability to claim a $500,000 deduction." Customer sought compensatory damages in the amount of $290,000. On July 12, 2016, Spicer Wealth Management settled with Customer for $290,000. Mr. Spicer contributed his errors and omissions insurance deductible, along with Spicer Wealth Management's errors and omissions insurance deductible, for a total of approximately $30,000, to the settlement amount.

On July 12, 2016, the Disclosure was published on Mr. Spicer's BrokerCheck records alleging that the "firm employed tax saving strategy for the client that required an IRS qualified appraisal. The client's CPA failed to file the appraisal, which resulted in the inability to claim a $500,000 deduction."

On October 7, 2020, Mr. Spicer filed for JAMS arbitration and signed a Demand for Arbitration Form seeking expungement of the Disclosure from his registration records maintained by the CRD, and Spicer Wealth Management filed a Stipulation for Arbitration. On January 26, 2021, the parties received a notice of the Appointment of an arbitrator. On June 12, 2021, Spicer Wealth Management filed an answer stating it did not oppose the expungement request by Mr. Spicer.

An arbitration hearing took place on September 29, 2021. The arbitrator issued an Award on October 28, 2021, recommending expungement of all references to the underlying complaint from Mr. Spicer's registration records maintained by the CRD in accordance with FINRA Rule 2080. Mr. Spicer is now seeking the Court's confirmation of this Award. The Respondents have not sought to vacate the Award.

### III. ARGUMENT

Pursuant to 9 U.S.C. § 9, within one (1) year after the issuance of an arbitration award, any party to the arbitration may apply to the Court for an order confirming the arbitration award, and the Court must grant such an order unless the award is vacated, modified, or corrected. The Federal Arbitration Act includes a presumption that an arbitration award will be confirmed. *See Gianelli Money Purchase Plan and Trust v. ADM Investor Services, Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998) ("… the FAA presumes that arbitration awards will be confirmed"); *see also Norman v. Kellie Auto Sales, INC.*, 158 N.E.3d 166 (2020) ("Arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator") (internal citations and punctuation omitted). There are seven (7) grounds for vacating an arbitration award: (1) where the award was procured by corruption or fraud; (2) where the arbitrators were corrupt or partial; (3) where the arbitrators were guilty of misconduct; (4) where the arbitrators exceeded

their powers; (5) where the award is arbitrary and capricious; (6) where enforcement of the award is contrary to public policy; and (7) where the award was made in manifest disregard for the law. *See*, 9 U.S.C. § 10(a); *see also B.L. Harbert Intern., LLC v. Hercules Steel Co.,* 441 F.3d 905, 909-910 (11th Cir. 2006).

Further, if a party fails to move to vacate the arbitration award within three (3) months after the issuance of the Award, that party is "barred from raising the invalidity of the award as a defense in opposition to a motion seeking confirmation of the award." 9. U.S.C. 12; *see also, Cullen v. Paine, Webber, Jackson, & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989); *see also*, Ohio Rev. Code § 2711.13 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest, as prescribed by law for service of notice of a motion in an action") (internal citations and punctuation omitted).

Here, none of the parties to the arbitration has moved the Court (or any court of competent jurisdiction) to vacate, modify, or correct the Award. Since it has been more than three (3) months since the issuance of the Award, a motion to vacate would be untimely at this point and should be barred by this Court as a defense to this Motion.

Even if the Court was inclined to entertain a motion to vacate the Award outside of the statute of limitations, none of the potential grounds for vacating the Award apply here. First, there is no evidence to suggest that the Award was procured by corruption or fraud, that the arbitrators were corrupt or partial, that the arbitrators were guilty of misconduct, or that the arbitrator exceeded his powers. The parties to the arbitration received the Notice of Appointment of Arbitrator on January 26, 2021, informing them that Mr. Gary Birnberg, Esq. had been appointed as arbitrator. The parties had ample notice to contact the JAMS case manager prior to the hearing

in September if there were any concerns of corruption or partiality. There has been no indication that Mr. Birnberg was corrupt, partial, or that he engaged in any misconduct related to the arbitration and the Award. Second, there is no indication that the Award was arbitrary, capricious, or in manifest disregard for the law or against public policy. In fact, the Award was lengthy and well-reasoned, whereby the arbitrator issued a six-page report detailing the reasons for his findings and decision, as well as a full analysis of FINRA Rule 2080 and its applicability to Mr. Spicer's expungement claim.

## IV. CONCLUSION

Since Mr. Spicer filed this Motion to confirm the Award within one (1) year of its issuance, and there has not been a timely vacatur motion filed nor are there any grounds for vacating, modifying, or correcting the Award, the Court should grant this Motion in accordance with 9 U.S.C. § 9 and confirm the Award recommending expungement of Mr. Spicer's Registration Records.

Date: July 7, 2022

*/ John M. Alten*
John M. Alten (0071580)
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, OH   44113-1448
216-583-7354
216-583-7355 (Facsimile)
jalten@ulmer.com

*Attorney for Petitioner*

OF COUNSEL

Chelsea Bauer
HLBS LAW
9737 Wadsworth Parkway G-100
Westminster, CO 80021
720-466-3505
303-954-9666 (Facsimile)
chelsea.bauer@hlbslaw.com

**CERTIFICATION**

In accordance with Local Rule 7.1(f), the undersigned hereby certifies that the foregoing Memorandum of Law in Support of Motion to Confirm Arbitration Award adheres to the twenty-page limitation set forth by such Rule.

Date: July 7, 2022

_____
Attorney for Movant